IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GLENDA L. A.,[1]

    Plaintiff,

v.

    Civil Action 3:22-cv-235
    Judge Thomas M. Rose
    Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

### REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12) and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

### I.     BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on April 20, 2020, alleging that she has been disabled since May 10, 2019. After those applications were denied at the initial and

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

reconsideration levels, a telephonic hearing was held on May 6, 2021, before an Administrative Law Judge ("the ALJ"), who issued an unfavorable determination on June 4, 2021. That unfavorable determination became final when the Appeals Council denied Plaintiff's request for review on June 21, 2022.

Plaintiff seeks judicial review of that final determination. She submits that remand is warranted because the ALJ erred when doing a subjective system assessment. (Pl.'s Statement of Errors 11–18, ECF No. 11.) Specifically, Plaintiff contends that the ALJ discounted her subjective symptoms because she did not pursue or comply with certain treatments, but the ALJ failed to investigate Plaintiff's reasons for doing so. Defendant correctly maintains that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n, 5–10, ECF No. 11.)

## II. THE ALJ'S DECISION

The ALJ issued her decision on June 24, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 18–39.) At step one of the sequential

evaluation process,[2] the ALJ found that Plaintiff not gained in substantial gainful activity since May 10, 2019, the alleged date of onset. (R. 24.) At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairments: peripheral neuropathy; carpel tunnel syndrome; asthma; lumbar spine degenerative disc disease; essential hypertension; bi-polar disorder; and an anxiety disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

The ALJ then set forth Plaintiff's residual functional capacity[3] ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the following: she can handle items frequently with her bilateral hands. She is also able to frequently finger objects with

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

>> her bilateral hands. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds. She is also able to occasionally balance, stoop, kneel, crouch, and crawl. Environmentally, the claimant can never work at unprotected heights with moving mechanical parts, and never operating a motor vehicle. She must also avoid concentrated exposure to dust, odors, fumes and pulmonary irritants. Mentally, she is able to perform simple, routine and repetitive tasks but not at a production rate pace. Additionally, she is able to tolerate few changes in a routine work setting.

(R. 27.)

At step four, the ALJ relied on testimony from a vocational expert ("VE") to determine that Plaintiff was unable to perform any of her past relevant work. (R. 30–31.) At step five, the ALJ relied again on VE testimony to determine that in light of her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of small products assembler, garment sorter, and office helper. (R. 31–32.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 10, 2019, through the date of the ALJ's decision. (R. 33.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when performing a subjective symptom assessment. Plaintiff asserts that the ALJ found that the record did not fully support her statements about the disabling nature of her symptoms because she did not seek out or comply with certain prescribed treatments, but that the ALJ failed to consider Plaintiff's reasons for declining treatments. The undersigned concludes that this contention of error lacks merit.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529; 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to

5

produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id*. In addition, there are seven factors set forth in SSR 16–3p[4] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors, he should show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5,

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996), which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit Court of Appeals has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

2021). Indeed, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

### A. Plaintiff's Physical Symptoms

Here, the ALJ summarized Plaintiff's statement about the intensity, persistence, and limiting effects of her physical symptoms as follows:

> The claimant testified that her main barriers to employment are due to severe lower extremity neuropathy that has caused her to fall "all of the time" (Hearing testimony). She added that she had severe difficulty walking short distances and that she requires lengthy rest breaks after she attempts basic activities (Exhibit B6E, pgs. 1–4). The claimant also reported that dressing herself and preparing meals was difficult and that she was unable to stand for more than ten (10) minutes continually (Exhibit B6E, pgs. 1–4). The claimant also reported severe grip strength limitations related to carpal tunnel syndrome, further reducing her ability to work. Overall, the medical evidence does not fully support the description of her symptoms or limitations.

(R. 28.) The ALJ then discussed Plaintiff's statements about her musculoskeletal symptoms and explained why the record evidence did not fully support them.[5] (*Id*.) The ALJ wrote as follows:

> Although the claimant reported that she frequently lost her balance and fell down, the results of numerous in-office visits describe mostly normal ambulation without the need for an assistive device (Exhibit B3F, pgs. 5, 8, 21, Ex. B5F, pgs. 8, 11, 14, 21, 24, 35, 41, 46, 52, 54, 80, 84, 89, 123, Ex. B14F, pgs. 19, 41). In June 2020, she exhibited a stead gait (Exhibit B5F, pg. 6). During an unrelated office visit, she exhibited full ranges of motion and full muscle strength throughout her musculoskeletal systems, and she walked normally (Exhibit B5F, pg. 14). Although the claimant also reported severe lumbar spine pain, the results of a June 2020 lumbar spine CT scan did not reveal significant abnormalities (Exhibit B5F, pg. 22). She was also provided with lumbar spine MRI scans (Exhibit B5F, pg. 38). The scans revealed "mild" broad based disc protrusions greatest at the L1-2 level (Exhibit B5F, pg. 38). She was referred for physical therapy, also suggesting her condition was not as limiting as described (Exhibit B5F, pg. 31). It was noted that

---

[5] Because Plaintiff's contention of error relates to her musculoskeletal issues, the undersigned's discussion is limited to the same.

> her physical therapists did not recommend the use of an assistive device (Exhibit B5F, pg. 31).
>
> The more recent medical records also describe mostly normal physical abilities, without a consistent description of frequent falls, debilitating pain, or a greatly reduced ability to perform daily activities. For example, in February 2021, it was reported that the claimant declined a spinal stimulator, "because she does not want actual surgery on her back", further suggesting that her condition was not as debilitating as described (Exhibit B15F, pg. 15). During the in-office examination, she walked on her heels and toes with no weakness, she did not exhibit severe balance difficulties, and she exhibited full neurological senses despite some pain upon palpation of her spine (Exhibit B15F, pg. 20). Similarly, during a follow-up visit, she exhibited "good" ranges of motion in all major joints, she walked normally, and the examination of her spine was normal, further reducing the consistency of the description of her symptoms and limitations (Exhibit B14F, pg. 19).
>
> Most recently, in March 2021, the claimant sought emergency room services for left-sided lumbar spine pain (Exhibit B17F, pgs. 14-17). She denied falls and she exhibited a steady gait without assistance (Exhibit B17F, pg. 14). The results of the physical examination identified full muscle strength and neurological senses throughout her musculoskeletal systems (Exhibit B17F, pg. 14). Overall, the results of numerous in-office examinations consistently describe mostly normal physical abilities, without a constant description of severe neurological deficits, walking difficulties, debilitating pain, muscle weakness, or significant balance problems, strongly supporting the above outlined residual functional (Exhibit B3F, pgs. 5, 8, 21, Ex. B5F, pgs. 8, 11, 14, 21, 24, 35, 41, 46, 52, 54, 80, 84, 89, 123, Ex. B14F, pgs. 19, 41).

(R. 28–29.)

As this discussion makes clear, the ALJ cited many reasons in support of his determination that the record did not fully support Plaintiff's statements about the disabling nature of her musculoskeletal symptoms. For instance, the ALJ explained that although Plaintiff reported frequent falling, examinations in 2020 showed that she ambulated normally without the need for an assistive device. (R. 28.) Substantial evidence supports that explanation. On April 28, 2020, a provider wrote that Plaintiff was able to ambulate without assistance. (R. 601.) Records dated June 1, 2020, noted that Plaintiff ambulated with an even, steady gait. (R. 557, 558.) That same day, Plaintiff reported that she was able to ambulate without any difficulty. (R. 559.)

8

Providers also noted that Plaintiff had "0" ambulatory aids (R. 567), and that she did not use a cane or a walker (R. 574). On June 2, 2020, Plaintiff denied gait instability or falls. (R. 585.) Records dated June 13, 2020, once again noted that Plaintiff ambulated with an even, steady gait. (R. 547.) That day, Plaintiff reported that she was negative for falls and myalgias. (R. 456.)

The ALJ additionally explained that despite Plaintiff's reports of frequent falling, examinations during this period found that she exhibited full ranges of motion and full muscle strength. (R. 28.) Substantial evidence supports that explanation as well. On January 30, March 5, March 19, and April 28, 2020, Plaintiff had 5/5 strength scores in her upper and lower bilateral extremities. (R. 602, 618, 619, 621.) On June 1, 2020, Plaintiff had 5/5 strength in all extremities and full ranges of motion. (R. 576.) On June 2, 2020, Plaintiff's range of motion was full throughout and she had 5/5 strength throughout except that she had 3/5 strength for her left dorsiflexion and left hip flexor. (R. 582.)

The ALJ further explained that although Plaintiff reported severe lumbar spine pain, diagnostic tests did not reveal that she had any significant abnormalities. (R. 28.) Substantial evidence supports that explanation. As the ALJ correctly noted, a June 2020 CT scan of Plaintiff's lumbar spine showed that she had no acute lumbar spine abnormalities. (R. 28, 563.) The ALJ also wrote that MRIs of Plaintiff's lumbar spine revealed only mild broad protrusions, which were greatest at the L1-2 level. (R. 28.) That accurately describes the record evidence. (R. 579.) Moreover, the ALJ accurately explained that Plaintiff was referred to physical therapy but that no assistive device was recommended. (R. 28, 572.)

The ALJ also explained that more recent records from 2021 described mostly normal physical abilities and did not reflect that Plaintiff consistently reported falls, pain, or a reduced ability to perform daily activities. (R. 28.) Again, substantial evidence supports the ALJ's

9

explanation. During an office visit on February 22, 2021, Plaintiff reported no falls or weakness. (R. 1432.) As the ALJ also accurately noted, an examination that day found that Plaintiff was able to walk on her heels and toes without any weakness. (R. 29, 1437.) During that same examination, Plaintiff had some pain in her lumbar spine with palpitation, but no pain with palpitation in her thoracic spine, 5/5 strength in her lower extremities, intact deep tendon reflexes, and Plaintiff ambulated with a slow but steady gait. (R. 1437.) The ALJ also accurately noted that an examination on January 20, 2021, found that Plaintiff had good range of motion in all major joints, no tenderness in her back, and appropriate gait. (R. 29, 1365.) Similarly, and as the ALJ noted, records dated March 10, 2021, indicated that Plaintiff reported no falls. (R. 29, 1527.) An examination that day also found that Plaintiff had 5/5 and 4+/5 strength scores, equal sensation in her bilateral lower extremities, and that she walked with a steady gait. (R. 1527.)

In short, the ALJ cited a number of record-based reasons why the record did not fully support Plaintiff's statements about the intensity, persistence, and limiting effects of her musculoskeletal symptoms. Plaintiff does not challenge any of the reasons described above. Instead, Plaintiff points out that the ALJ explained that the record did not fully support her statements, in part, because she declined a spinal stimulator and that this suggested that her condition was not as debilitating as described. (R. 28–29.) Plaintiff maintains that this constitutes reversible error because the ALJ failed to investigate her reasons for declining the spinal stimulator.

Agency policy provides that an ALJ will consider whether a claimant sought medical treatment and followed treatment that was prescribed when her or she performs a subjective symptom assessment. SSR 16–3p, 2017 WL 5180304 at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that

10

they are not. *Id.* But an ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The agency also provides examples of reasons why an individual may forgo treatment, including side effects from medications, a lack of funds for treatment, and an inability to understand the need for treatment due to a mental impairment. *Id.* at *9-10. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

    Here, the ALJ noted that Plaintiff declined a spinal stimulator without considering Plaintiff's possible reasons for doing so. Nevertheless, the Sixth Circuit has held that "harmless error analysis applies to credibility determinations in the social security disability context." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). And if "there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." *Id.* (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (add'l citation omitted)). Such is the case here. The ALJ did not rely exclusively on Plaintiff's decision to decline a spinal stimulator. Indeed, the ALJ cited a variety of other record-based reasons why Plaintiff's statements were not fully supported. Accordingly, any error was harmless, and Plaintiff's contention of error lacks merit. *See Tate v. Comm'r of Soc. Sec.,* No. 2:13-cv-11473, 2014 WL 4536929, at *7–9, (E.D. Mich. Sept. 11, 2014) (finding only harmless error where an ALJ failed to consider a plaintiff's reasons for medication non-compliance but also relied on other record-based reasons to discount plaintiff's statements); *Tina S. v. Kijakazi*, No. 3:21-cv-266-CRS, 2022 WL 4595066, at *4 (W.D. Ky. Sept. 30, 2022) (finding only

harmless error where an ALJ failed to consider a plaintiff's reasons for conservative treatment, in part, because the ALJ relied on other record-based reasons to find that plaintiff's statements were not fully supported by the record).

### B. Plaintiff's Mental Health Symptoms

Plaintiff also contends that the ALJ erred with regard to her statements about the disabling nature of her depression and anxiety symptoms. This contention of error also lacks merit.

The ALJ summarized Plaintiff's statement about the intensity, persistence, and limiting effects of her depression and anxiety symptoms as follows:

> As noted above, the claimant also stated that her ability to work was severely limited due to severe symptoms of depression and anxiety (Hearing testimony). Despite her description of mental status deficits and social anxiety, the claimant has not consistently sought or required intensive psychiatric supports, consistent counseling therapy treatments, or in-home supports. The treatment notes clearly show that the claimant's symptom control improved after she maintained a consistent medication regimen. For example, in May 2020, it was noted that she was "taking medications regularly" and that her depression was better (Exhibit B13F, pg. 12). During a series of follow-up visits, she consistently exhibited intact cognitive and social skills and continually reported improved symptom control while she maintained her medication program, strongly supporting the determination that she remains capable of maintaining unskilled work (Exhibit B13F, pgs. 4, 7, 10, 13, 16, 19, 22, 25, 28, 31, 34, 37).

(R. 29.)

As this explanation makes clear, the ALJ found that the record did not fully support Plaintiff's statements about the disabling nature of her depression and anxiety symptoms because, in part, her symptoms improved with medication. (*Id.*) The effectiveness of medication is an appropriate consideration. 20 C.F.R. § 404.1529(c)(3)(iv); SSR 16–3p, 2017 WL 5180304 at *8.

Substantial evidence also supports that explanation. As the ALJ noted, in May 2020, Plaintiff reported that she was taking regularly taking her medications and that her depression was better. (*Id*.) And as described, records dated February 11, March 10, April 7, May 6, 2020, reflect that Plaintiff reported that she was "taking medications regularly;" "[d]oing well with [m]edications;" and that she felt her medications were helping and that her depression was better. (R. 1311, 1314, 1317, 1320, 1323.) The ALJ further explained that records from subsequent visits indicate that Plaintiff continued to report improved symptom control with medications. Substantial evidence supports that explanation too—Plaintiff again reported that she was doing well with medications, that they were helping, and that her depression was better on June 3, July 27, August 20, September 16, October 13, November 9, December 7, 2020, and January 5, 2021. (R. 1323, 1326, 1329, 1332, 1335, 1338, 1340, 1344.)

The ALJ also explained that examinations regularly found that Plaintiff exhibited intact cognitive and social skills. (R. 29.) Substantial evidence supports that explanation. Examinations routinely found that Plaintiff's attention was focused, and that she had goal-directed thought processes, fair insight and judgment, and average intelligence (R. 1312, 1315, 1318, 1321, 1324, 1327, 1330, 1333, 1336, 1339, 1342, 1345.) Examinations also routinely noted that Plaintiff was cooperative and had average eye contact. (*Id*.)

In sum, the ALJ cited a number of record-based reasons why the record did not fully support Plaintiff's statements about the intensity, persistence, and limiting effects of her mental health symptoms. And Plaintiff does not challenge the reasons described above. Instead, Plaintiff again points out that the ALJ explained that the record did not fully support her statements, in part, because Plaintiff did not consistently seek out intensive psychiatric supports, counseling, or

in-home supports. (R. 29.) Plaintiff again argues that this constitutes reversible error because the ALJ failed to investigate her reasons for failing to pursue such treatments.

Once again, however, the ALJ did not rely exclusively on Plaintiff's failure to pursue such treatment. Instead, the ALJ also explained that Plaintiff's statements were not fully supported because treatments were effective and examination findings were regularly benign. (R. 29.) Those explanations enjoy substantial support from the record. Accordingly, any error was harmless, and Plaintiff's contention of error lacks merit.

## IV.     RECOMMENDED DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's subjective symptom assessment and that any errors identified by Plaintiff are harmless. Therefore, and for all the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE